**SPEEDY STOP FOOD STORES, LTD., Appellant,**

v.

**REID ROAD MUNICIPAL UTILITY DISTRICT NO. 2, Appellee.**

No. 14–07–00225–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 3, 2009.

Rehearing Overruled March 26, 2009.

---

Bill W. Russell, Victoria, for appellant.

C. Charles Dippel, for appellee.

Panel consists of Justices FROST, SEYMORE and GUZMAN.

## MAJORITY OPINION

KEM THOMPSON FROST, Justice.

This is an appeal from a summary judgment in a condemnation case. At the center of the controversy is Texas's longstanding rule that a property owner who is familiar with the market value of his prop-erty may testify regarding that market value, even if he is not qualified or designated as an expert witness (hereinafter "Property Owner Rule"). Today we must decide whether this rule, applied countless times to individual property owners, applies to corporate property owners. The Supreme Court of Texas has not directly spoken on the matter, and our sister courts of appeals are divided on this issue.

The trial court granted a no-evidence summary judgment after striking all of the compensation evidence offered by the corporate property owner in the condemnation action. One of the stricken affidavits was made by a representative of the corporate property owner under the Property Owner Rule. If the Property Owner Rule does not apply to corporate entities, then the trial court did not err in striking this affidavit. If the Property Owner Rule does apply, then the trial court erred in striking the affidavit. We conclude that the Property Owner Rule applies to all property owners, including corporate property owners. Because evidence in the stricken affidavit raises a genuine issue of material fact regarding compensation, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Speedy Stop Food Stores, Ltd., a Texas limited partnership ("Speedy Stop") owns a 2.0661 acre tract of land in Harris County, Texas ("Property"). Appellee Reid Road Municipal Utility District No. 2 (the "District") initiated a condemnation action in the trial court below for the purpose of acquiring a .0592 acre waterline easement over, through, under, and across the Property for the construction, operation, and maintenance of facilities for transportation and delivery of water.

The trial court appointed three special commissioners to assess condemnation

damages. These commissioners convened a hearing, at which the District proffered an appraisal by David Ambrose, a state-certified appraiser. Ambrose opined that Speedy Stop's damages are $9,342. The Special Commissioners assessed damages in that amount in favor of Speedy Stop, and the District deposited a sum in that amount into the registry of the court below. Speedy Stop timely filed objections to the special commissioners' findings under the condemnation statute, triggering a de novo proceeding in the trial court. The trial court first granted a motion for partial summary judgment in favor of the District, after which the only remaining issue was the amount of compensation to be awarded to Speedy Stop.

The District then filed a second motion for summary judgment in which it asserted a single no-evidence ground, namely that there is no evidence of the amount of just compensation to be paid to Speedy Stop for the taking of the easement. In its motion, the District sought judgment that Speedy Stop be awarded one dollar in nominal damages for the condemnation of the easement. In response, Speedy Stop offered the affidavit of Carlton LaBeff, the vice president of the general partner of Speedy Stop. LaBeff made the affidavit on behalf of the owner of the property, Speedy Stop. LaBeff testified that, for several years, he has been in charge of all real estate acquisitions for Speedy Stop, which owns and operates more than a hundred convenience stores in Texas. According to his affidavit, LaBeff is the person who has responsibility for dealing with easement issues at all of the Speedy Stop stores, and he was involved with the acquisition of the convenience store on the property that is the subject of this condemnation action. LaBeff's affidavit shows that he is familiar with the market value of the property in question. LaBeff testified that there is a $62,000 difference in the fair market value

of the Property immediately before and immediately after the condemnation of the easement. LaBeff does not have a real-estate broker's license, and he is not a licensed real-estate appraiser. Speedy Stop did not designate LaBeff as an expert witness.

Speedy Stop also attached a transcript of David Ambrose's appraisal and testimony from the special commissioners' hearing. In this testimony, Ambrose opined that Speedy Stop's total damages are $9,342. Speedy Stop stated that it attached this testimony as an admission against interest.

In its summary-judgment reply, the District objected to LaBeff's affidavit and moved to exclude it on the following grounds:

- The time for designating experts has expired, and Speedy Stop did not designate LaBeff as an expert witness.
- LaBeff is not qualified to testify as an expert because he is not a licensed real-estate appraiser.
- LaBeff's methodology does not satisfy the reliability requirement for expert testimony.

The District also objected to the admission of Ambrose's testimony and appraisal.

The record reflects that the trial court focused on the issue of whether the Property Owner Rule applies to corporate entities. The District argued it does not, and Speedy Stop argued it does. The trial court sustained the District's objections to LaBeff's affidavit and to Ambrose's testimony and appraisal. The trial court granted the District's motion to exclude these items from the summary-judgment evidence. With no evidence before it as to how much compensation the District must pay Speedy Stop, the trial court granted the District's no-evidence motion for summary judgment. The trial court rendered

judgment that Speedy Stop receive one dollar in compensation for the condemnation of the easement, and the trial court ordered that the trial court clerk distribute the remaining $9,341 in the registry of the court to the District. In this appeal, Speedy Stop challenges the trial court's summary judgment.

## ISSUES PRESENTED

Speedy Stop presents the following issues:

(1) Did the trial court err in granting [the District's] no evidence motion for summary judgment?

(2) Was [Speedy Stop's] summary judgment evidence, the affidavit of Carlton LaBeff, as the owner and as a lay witness, some evidence of the value of the property rights being condemned?

(3) Was [the District's] appraisal testimony by Mr. David Ambrose at the condemnation hearing or Mr. Ambrose's appraisal some evidence that the property being condemned had value?

Speedy Stop argues in its appellate brief that the Property Owner Rule applies to corporate entities and that LaBeff's affidavit, on behalf of Speedy Stop, raises a fact issue as to the amount of compensation the District must pay Speedy Stop. LaBeff's affidavit shows his familiarity with the market value of the Property and states that the condemnation of the easement would decrease the market value of the Property by $62,000.[1] *See Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex.1984) (stating that property owners can testify to the market value of their property if they state that they are familiar with it, even though they are not testifying as expert witnesses). Therefore, if, as the District asserts, the Property Owner Rule does not apply to corporate entities such as Speedy Stop, the trial court did not err in excluding LaBeff's testimony. But if, as Speedy Stop asserts, the Property Owner Rule does apply to corporate entities such as Speedy Stop, then the trial court abused its discretion by sustaining the District's objections to LaBeff's affidavit and suppressing his testimony.

In its appellate brief, Speedy Stop does not explicitly challenge the trial court's evidentiary ruling striking LaBeff's affidavit. Nonetheless, the Texas Supreme Court has emphasized that we must construe issues presented liberally to obtain a just, fair, and equitable adjudication of the rights of the litigants. *Perry v. Cohen*, 272 S.W.3d 585, 588 (Tex., 2008). In light of Speedy Stop's argument attacking the basis for the trial court's suppression of LaBeff's affidavit, we construe Speedy Stop's brief as assigning error to this ruling of the trial court. *See id.* (holding that court of appeals erred by concluding appellant failed to assign error as to special-exceptions order because, under a reasonable yet liberal construction of appellant's brief, appellant challenged this order given that appellant presented argument challenging the basis of this order, though appellant did not expressly challenge the order). Accordingly, we address the trial court's evidentiary ruling striking LaBeff's affidavit.

## STANDARDS OF REVIEW

We review a trial courts's evidentiary rulings for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex.2005) (per curiam). The trial court abuses its discre-

---

1. The District suggests that LaBeff's affidavit reasonably can be construed to state that the condemnation of the easement will increase the market value of the Property by $62,000. We disagree.

tion if it acts without reference to guiding rules or principles, or in an arbitrary or unreasonable manner. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence of probative force to raise a genuine issue of fact as to the essential elements attacked in the no-evidence grounds. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex.2002). A no-evidence summary judgment must be granted if the party opposing the motion does not respond with summary-judgment evidence that raises a genuine issue of material fact. *See Arguelles v. Kellogg Brown & Root, Inc.*, 222 S.W.3d 714, 723 (Tex.App.-Houston [14th Dist.] 2007, no pet.). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Good-*

*year Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex.2007).

### ANALYSIS

■ The Supreme Court of Texas has held that property owners who are familiar with the market value of their property, including real property, may testify as to their opinions regarding this value, even though they do not qualify as expert witnesses and even though they would not be allowed to testify regarding the market value of property they do not own. *See Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig*, 675 S.W.2d 503, 504–05 (Tex.1984). Though the owner in *Porras* was a natural person, the *Porras* court stated that the Property Owner Rule applies to "the owner" of the property. *See Porras*, 675 S.W.2d at 504–05. Corporate owners are property owners just as natural persons are, and the *Porras* court did not give any indication that the Property Owner Rule is limited to owners who are natural persons.[2] *See id.* Out of the three intermediate courts of appeals that specifically have addressed this issue, the courts in Waco and Corpus Christi have concluded that the Property Owner Rule applies to corporate entities, and the Fort Worth court has held that it does not.[3] *Compare Libhart v. Copeland,*

---

**2.** Our dissenting colleague reasons as follows: (1) the *Porras* court stated that a witness, who is otherwise unqualified to give expert testimony, may testify regarding the market value of *his own* property but not the property of others; (2) corporations cannot be witnesses but rather must designate an agent or representative to testify on their behalf; (3) because a corporate owner cannot testify as a witness as to the market value of its own property, the *Porras* court implicitly decided that the Property Owner Rule does not apply to corporate owners. *See post* at p. 659, n. 1. The *Porras* court did not speak of a witness; rather it stated that "the *owner* of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else."

*Porras*, 675 S.W.2d at 504 (emphasis added). It is well-established that corporations can act only through human agents and that, when an officer or corporate representative acts on behalf of a corporate entity, that act is the act of the corporation itself. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997). Therefore, when a corporate representative testifies on the corporation's behalf as to the market value of corporate property, the owner of the property is testifying as to the market value of the owner's property. *See id.*

**3.** Our dissenting colleague asserts that the *Taiwan Shrimp* court did not hold that the Property Owner Rule applies to corporate property owners. *See post* at p. 659–60. How-

949 S.W.2d 783, 798 (Tex.App.-Waco 1997, no pet), *and Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Dev., Inc.,* 915 S.W.2d 61, 71 (Tex.App.-Corpus Christi 1996, writ denied), *with Mobil Oil Corp. v. City of Wichita Falls,* 489 S.W.2d 148, 150 (Tex.Civ.App.-Fort Worth 1972, writ ref'd n.r.e.). There does not appear to be a case from the Supreme Court of Texas or this court on this point.

Courts in Arizona, Colorado, Kansas, Tennessee, and Washington have held that the Property Owner Rule applies to corporate owners, while courts in Hawaii and Nebraska have held that it does not. *Compare Atkinson v. Marquart,* 112 Ariz. 304, 541 P.2d 556, 559 (1975); *Denver Urban Renewal Auth. v. Berglund–Cherne Co.,* 193 Colo. 562, 568 P.2d 478, 483 (1977); *McCall Service Stations, Inc. v. City of Overland Park,* 215 Kan. 390, 524 P.2d 1165, 1173 (1974); *Tennessee v. Livingston Limestone Co.,* 547 S.W.2d 942, 943–44 (Tenn.1977); *Weber v. West Seattle Land & Improv. Co.,* 188 Wash. 512, 63 P.2d 418, 420–21 (1936), *with City and County of Honolulu v. International Air Service Co.,* 63 Haw. 322, 628 P.2d 192, 200–01 (1981); *First Baptist Church of Maxwell v. Nebraska,* 178 Neb. 831, 135 N.W.2d 756, 758 (1965). In addition, courts in Florida, Maryland, Massachu-

setts, Minnesota, and Oregon have held that representatives of a corporate property owner fall within the Property Owner Rule if they demonstrate familiarity or knowledge of the property in question as a result of their work for the corporate entity. *See Harbond, Inc. v. Anderson,* 134 So.2d 816, 818–19 (Fla.App.1961); *M.A. Realty Co. v. State Roads Comm.,* 247 Md. 522, 233 A.2d 793, 795–96 (1967); *Newton Girl Scout Council, Inc. v. Massachusetts Turnpike Auth.,* 335 Mass. 189, 138 N.E.2d 769, 775 (1956); *McClure v. Village of Browns Valley,* 143 Minn. 339, 173 N.W. 672, 673 (1919); *Oregon v. Assembly of God,* 230 Or. 167, 368 P.2d 937, 942 (1962). The interests of uniformity and consistency weigh in favor of allowing corporate owners to be "owners" of property under the Property Owner Rule; otherwise, natural persons would have greater rights regarding their property than corporate owners. *See Weber,* 63 P.2d at 420–21. Such a result would not only compromise general notions of fairness and equal treatment but also would undermine the stated rationale for the Property Owner Rule.

The Property Owner Rule is based on the premise that property owners ordinarily know the market value of their property[4] and therefore have a sound basis for

---

ever, the *Taiwan Shrimp* court cited *Porras* and concluded that "as U.S.A. Shrimp's president and principal shareholder, Tao could establish the value of the [property in question] if his opinion was based on fair market value." *See Taiwan Shrimp Farm Village Ass'n, Inc.,* 915 S.W.2d at 71. Our dissenting colleague tries to distinguish *Libhart* by arguing that the *Libhart* court relied on an admission by the pastor and did not rely on the Property Owner Rule. *See post* at p. 659. We disagree with this characterization of *Libhart.* The *Libhart* court relied on the pastor's opinion as to the value of the real property owned by the church, cited *Redman* for the proposition that a "property owner is qualified to testify to the market value of his property," and cited *Taiwan Shrimp* for the proposition

that a "corporate president can testify to market value of corporate property." *See Libhart,* 949 S.W.2d at 798 (citing *Redman Homes, Inc.,* 920 S.W.2d at 669 and *Taiwan Shrimp Farm Village Ass'n, Inc.,* 915 S.W.2d at 71). It is clear the *Libhart* court concluded that the Property Owner Rule applies even when the realty is not owned by a natural person. *Libhart,* 949 S.W.2d at 798.

4. For example, owners of real property must pay property taxes each year based on the market value of their property, unless that property is completely exempt from taxation. *See* TEX. TAX CODE ANN. § 11.01, 23.01 (Vernon 2008). Owners can, and many do, challenge the valuation of their property as not reflect-

testifying as to its value. *See Porras,* 675 S.W.2d at 504; *State v. Berger,* 430 S.W.2d 557, 559 (Tex.Civ.App.-Waco 1968, writ ref'd n.r.e.). There is no reason to conclude that corporate officers who are familiar with the market value of corporate property are less reliable than natural persons who are familiar with the market value of their property. The Supreme Court of Texas already has adopted the Property Owner Rule as to natural persons. *See Redman Homes, Inc.,* 920 S.W.2d at 669; *Porras,* 675 S.W.2d at 504–05. Thus, it makes sense to apply the rule to all property owners. After careful consideration, we agree with the majority of states and Texas courts of appeals that have addressed the issue and reached this conclusion.

■ We hold that the Property Owner Rule applies to corporate entities owning property and that a representative of the corporate owner who is familiar with the market value of the property in question may testify under this rule as to the market value of the property, without being designated as an expert witness. *See Libhart,* 949 S.W.2d at 798; *Taiwan Shrimp Farm Village Ass'n, Inc.,* 915 S.W.2d at 71; *Atkinson,* 541 P.2d at 559; *Denver Urban Renewal Auth.,* 568 P.2d at 483; *Harbond, Inc.,* 134 So.2d at 818–19; *McCall Service Stations, Inc.,* 524 P.2d at 1173; *M.A. Realty Co.,* 233 A.2d at 795–96; *Newton Girl Scout Council, Inc.,* 138 N.E.2d at 775; *McClure,* 173 N.W. at 673; *Assembly of God,* 368 P.2d at 942; *Livingston Limestone Co.,* 547 S.W.2d at 943–44; *Weber,* 63 P.2d at 420–21. Carlton LaBeff testified as the vice president of Speedy Stop's general partner and made his affidavit on behalf of the property owner,

Speedy Stop. LaBeff is in charge of all real estate acquisitions for Speedy Stop, which owns and operates more than a hundred convenience stores in Texas. He was involved with the acquisition of the convenience store on the property that is the subject of this condemnation action and he is the individual responsible for dealing with easement issues at all of the Speedy Stop stores. LaBeff's affidavit shows his familiarity with the market value of the property. Therefore, LaBeff's testimony is admissible under the Property Owner Rule, and the trial court erred in excluding this evidence based on the District's objections, all of which sought to exclude the evidence as expert testimony. *See Porras,* 675 S.W.2d at 504–05; *Libhart,* 949 S.W.2d at 798; *Taiwan Shrimp Farm Village Ass'n, Inc.,* 915 S.W.2d at 71. Because LaBeff's affidavit raises a genuine issue of material fact regarding the compensation issue, the trial court's error in excluding this affidavit was harmful. Accordingly, we sustain Speedy Stop's first and second issues, reverse the trial court's judgment, and remand for further proceedings consistent with this opinion.[5]

SEYMORE, J., dissenting.

CHARLES W. SEYMORE, Justice, dissenting.

Rulings on admission or exclusion of evidence rest within the sound discretion of the trial court. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 906 (Tex.2000). We should not reverse the trial court's decision to admit or exclude evidence unless it is shown that the trial court abused its discretion, and the erroneous ruling probably caused rendition of an improper judgment. *Gee v. Liberty Mut.*

---

ing the market value. *See* TEX. TAX CODE ANN. § 41.41 (Vernon 2008).

**5.** Based on this disposition, we need not and do not address whether the trial court erred in striking Ambrose's testimony and appraisal.

*Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1999). The standards for admissibility of evidence in a summary judgment proceeding are the same as those applicable to a regular trial. *United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30 (Tex.1997); *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 365 (Tex.App.-Houston [1st Dist.] 2007, no pet.). Accordingly, for reasons outlined below, I would hold the trial court did not abuse its discretion.

First, in its brief, Speedy Stop did not directly address the consequences of its failure to timely designate experts. The failure to designate experts as required by the rules is sanctionable by exclusion of the expert's report. Tex.R. Civ. P. 193.6; *see also Duerr v. Brown,* 262 S.W.3d 63, 76 (Tex.App.-Houston [14th Dist.] 2008, no pet.); *Metzger v. Sebek,* 892 S.W.2d 20, 38 (Tex.App.-Houston [1st Dist.] 1994, no writ) ("Every trial court has the 'inherent power' to control the disposition of the cases on its docket 'with economy of time and effort for itself, for counsel, and for litigants.'" (quoting *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936))). Consequently, this court should affirm the trial court's summary judgment based solely on Speedy Stop's failure to timely designate expert witnesses. *See Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 157 (Tex.2004).

Second, I disagree with the majority's suggestion that we are presented with a case of first impression relative to whether an unqualified corporate representative or agent should be allowed to give expert testimony regarding the market value of property. The Texas Supreme Court has held that a landowner may testify regarding the market value of his real property despite his lack of competence to testify regarding the value of property belonging to another. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). LaBeff is the vice president of C.L. Thomas, Inc., Speedy Stop's general partner. He signed his affidavit "on behalf of the owner, as the owner's representative and as the owner." Although he stated that he supervised all of Speedy Stop's property acquisitions, he is not the land owner. Speedy Stop owns the land, not LaBeff.[1] Accordingly, LaBeff is not competent to testify regarding the value of Speedy Stop's property.

Third, I disagree with the majority's suggestion that in *Taiwan Shrimp Farm Village Ass'n, Inc. v. U.S.A. Shrimp Farm Development, Inc.* 915 S.W.2d 61(Tex.App.-Corpus Christi 1996, writ denied) and *Libhart v. Copeland,* 949 S.W.2d 783, 798 (Tex.App.-Waco 1997, no pet.), our sister courts held the Property Owner Rule applies to corporations. In *Taiwan Shrimp Farm Assoc.,* the court of appeals cited *Porras* for the proposition that a

---

1. The majority opines: "Corporate owners are property owners just as natural persons are, and the *Porras* court did not give any indication that the Property Owner Rule is limited to owners who are natural persons." *Supra* at p. 656. My colleagues miss the *Porras* court's point about ownership. The majority in *Porras* cited *State v. Berger,* 430 S.W.2d 557, 559 (Tex. App.-Waco 1968, writ ref'd n.r.e.), in support of their conclusion that a witness, who is otherwise unqualified to give expert testimony, may testify regarding the market value of *his own* property, not the property of others. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984) The Property Owner Rule is predicated entirely on ownership. It rests on the fact that an owner ordinarily knows the value of his property. *Berger,* 430 S.W.2d at 559. A corporation that owns property cannot present testimony without designating an agent or employee who, by definition, is not the owner. I submit that the Texas Supreme Court implicitly decided this issue in *Porras.* Moreover, extending the Property Owner Rule to allow expert testimony from designated agents of corporations who are otherwise unqualified to give such testimony would emasculate the purpose and intent of Rule 702, Texas Rules of Evidence.

property owner may testify regarding the market value of his property. Without distinguishing between the corporate entity and its president, the court justified its decision with the bare assertion that "a property owner can testify to market value as long as testimony shows it refers to market value and not intrinsic value." 915 S.W.2d at 71. In *Libhart*, former members of a dissolved church, previously formed as an unincorporated association, sued their former pastor for fraud and conversion of the parsonage. *See* 949 S.W.2d at 790–91. The court of appeals noted "[the pastor] testified that he was trying to sell the parsonage for $55,000. He agreed with [the former member's] counsel that it was worth that much." *Id.* at 798. Citing *Porras* and *Taiwan Shrimp Farm Ass'n,* the court held the pastor's *admission* regarding the value of the parsonage constituted some evidence from which the jury could award damages. *Id.* The court of appeals did not base its opinion on the pastor's capacity as an agent of the church.

Speedy Stop cites a number of cases in which Texas courts allowed an agent of a business entity to testify regarding value of property. However, none of those cases involved an agent of a business entity who was allowed to testify under the landowner exception to the general rule that the difference in value of land immediately before and after the taking must be proved by the testimony of a properly qualified expert. *See Maxey v. Tex. Commerce Bank of Lubbock,* 571 S.W.2d 39 (Tex.Civ.App.-Amarillo1978, writ ref'd n.r.e.) (involving qualified expert testifying about property value.); *State v. Tellepsen Const. Co.,* 459 S.W.2d 447 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ) (same); *Tex. Pig Stands, Inc. v. Krueger,* 441 S.W.2d 940 (Tex.Civ.App.-San Antonio 1969, writ ref'd n.r.e.) (holding principal shareholder of corporation, who negotiated leases of cor-poration for eleven years, may testify re-garding value of leasehold in connection with apportionment of condemnation award between lessor and lessee, but not addressing whether principal shareholder qualified as an expert or testified pursuant to landowner exception).

Giving due regard for vertical and lateral stare decisis, it is my considered opinion that the holding in *Mobil Oil Corp. v. City of Wichita Falls* controls our disposition of this appeal. 489 S.W.2d 148, 150 (Tex.Civ. App.-Fort Worth 1972, writ ref'd n.r.e.). In a condemnation case where the issue of expert testimony from an unqualified cor-porate agent was sharply drawn, the Fort Worth Court of Appeals emphatically con-cluded that the landowner exception does not extend to designated agents of corpo-rate property owners, unless the agent qualifies as an expert. *Id.* Accordingly, I would sustain the trial court's decision to exclude LaBeff's affidavit because LaBeff is not the owner of the subject property.

Speedy Stop further contends the sum-mary judgment should be reversed be-cause the appraisal and testimony of Reid Road's witness, David Ambrose, amounts to some evidence that the condemned property had value. Speedy Stop argues that the trial court abused its discretion by excluding David Ambrose's report and tes-timony before the special commissioners. The record is silent relative to the trial court's rationale for excluding Ambrose's report and testimony. As previously noted, Speedy Stop ignores the possibility that the trial court did not consider Ambrose's report simply because Speedy Stop did not timely designate experts.

Speedy Stop supports its contention that the David Ambrose report and earlier tes-timony are not hearsay, arguing that such statements are an admission against inter-est. Speedy Stop cites *Yarbrough's Dirt*

*Pit v. Turner* for the proposition that a conclusion by an expert hired by an adverse party is similar to an admission by a party opponent, and that a conclusion of an expert witness hired by an opposing party is admissible against the party opponent. 65 S.W.3d 210, 214 (Tex.App.-Beaumont 2001, no pet.). However, I am not persuaded by the rationale in *Yarbrough. See McCluskey v. Randall's Food Mkts., Inc.,* No. 14-03-01087-CV, 2004 WL 2340278, at *3-5 (Tex.App.-Houston [14th Dist.] Oct. 19, 2004, no pet.) (mem.op.). To hold that all statements made by an expert witness are admissions of the party who called the expert is to misconstrue the rules of evidence, the law of agency, and the purpose for employment of expert witnesses.

To be an admission under rule 801(2), a statement must be made by a party's agent or servant. Tex.R. Evid. 801(2). A person is not an agent or servant unless he is subject to another party's control. *See Coleman v. Klockner & Co. AG,* 180 S.W.3d 577, 588 (Tex. App.-Houston [14th Dist.] 2005, no pet.). If there is no proof of control, there is no agency relationship. *Ross v. Tex. One P'ship,* 796 S.W.2d 206, 210 (Tex.App.-Dallas 1990), *writ denied,* 806 S.W.2d 222 (Tex.1991) *(per curiam ).* Under the Rules of Evidence, an expert is required to testify regarding his own, theoretically impartial, opinion. *See* Tex.R. Evid 602. Accordingly, testimony of an expert should not, *ipso facto,* be deemed an admission of the party who originally sought the expert's opinion.

Although testimony of an expert may be admissible as an admission by a party opponent if the expert is the agent or servant of the party opponent, *see* Tex.R. Evid 801(2), Speedy Stop has presented no evidence that Ambrose was acting as an agent or servant of Reid Road for any purpose other than to provide expert testimony. Because there is no evidence in the record supporting the contention that the report constitutes an admission by Reid Road, I would hold that the trial court did not abuse its discretion by excluding Ambrose's report and earlier testimony.

For all the reasons outlined above, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.