IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 14, 2010 Session

# CITY OF PULASKI v. ALBERT M. MORRIS, JR. AND JUDITH L. MORRIS

**Appeal from the Circuit Court for Giles County**
**No. CC-10758     Robert L. Holloway, Jr., Judge**

---

**No. M2010-00047-COA-R3-CV - Filed September 23, 2010**

---

In a condemnation proceeding, landowners objected to the admission of expert testimony that was based in part on an appraisal of the land 14 months prior to the condemnation. They also objected to the admission of an affiliate broker's opinion of value. The trial court allowed the testimony, the jury returned a verdict, and a motion for new trial filed by landowners was denied. On appeal, landowners assert that both experts' opinions of value were inadmissible, that the trial court failed to properly review the motion for new trial, and that the jury's verdict was not supported by any material evidence. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Jere N. McCulloch and T. Price Thompson, III, Lebanon, Tennessee, and James S. Hereford, Jr., Fayetteville, Tennessee, for the appellants, Albert M. Morris, Jr., and Judith L. Morris.

M. Andrew Hoover, Pulaski, Tennessee, for the appellee, City of Pulaski.

## OPINION

This appeal arises from a condemnation case in which the City of Pulaski, Appellee, condemned 19.6 acres of land owned by the Appellants, Albert and Judith Morris. The Morrises did not dispute the City's authority to take the property but challenged the $35,500.00 determined by the City to be just compensation. In a trial on the sole issue of valuation, a jury returned a verdict of $40,000.00. On appeal, the Morrises claim there were errors in the admission of evidence and that the verdict was contrary to competent evidence presented.

## I. BACKGROUND

The Morrises owned 46.5 acres of farmland in Pulaski, Tennessee. In December 2004, the City of Pulaski acquired by eminent domain 19.6 acres of the Morrises' land in order to construct, operate, and maintain a runway protection zone at the Pulaski-Giles County Airport. An Agreed Order of Possession was entered on December 10, 2004, and the City tendered $35,500.00 for the property. Because the Morrises disputed whether the amount constituted fair compensation, the trial court set a trial on the issue of valuation.

At the trial held June 2, 2009, the Morrises called William Parrish, a certified general appraiser, to testify as their expert witness. Mr. Parrish testified that he appraised the Morrises' 46.5 acres and determined that the entire property was worth $13,500.00 per acre. Mr. Parrish concluded, therefore, that the value of the 19.6 acres condemned by the City was $264,600.00.

The City offered the testimony of two expert witnesses, John Hahn, Jr., and Bob Bryant. Mr. Hahn, a licensed real estate appraiser, testified that he conducted an appraisal of the property and determined the fair market value of the 19.6 acres to be $32,350.00 as of October 9, 2003. He also opined that between the date of his appraisal and the date of the taking, the property "would increase in value from two to three percent per [year]." Mr. Bryant, a real estate agent and affiliate broker, testified that, based on his analysis of the general market conditions, the Morrises' property had appreciated $47.00 per acre between the time of Mr. Hahn's appraisal and the date of the taking. The Morrises objected to the testimony of both witnesses when offered.

At the close of the proof, the Morrises again moved to exclude the testimony of Mr. Hahn and Mr. Bryant. The trial court denied the motion and the jury returned a verdict awarding the Morrises $40,000.00 as compensation. The Morrises thereafter filed a motion for a new trial, asserting that, because Mr. Hahn's valuation of the property occurred more than a year prior to the taking, his opinion as to value was inadmissible. The Morrises also contended that Mr. Bryant was not qualified to testify as an expert in condemnation cases since he was neither a licensed appraiser nor a licensed real estate broker. The trial court denied the motion for new trial, and the Morrises appeal, raising the same issues regarding the testimony of the city's expert witnesses and contending that, because the city did not offer any other evidence as to the measure of damages, the verdict is not supported by material evidence. They also contend that the court erred in overruling the motion for new trial.

## II. DISCUSSION

### 1. Testimony of John Hahn

While the Morrises concede that Mr. Hahn was qualified to testify as an expert, they contend that his testimony should have been excluded because his valuation of the property did not occur on the date of the take, December 10, 2004, but rather on October 17, 2003. The Morrises contend that Tenn. Code Ann. § 29-17-910 requires property to be valued as of the date of the taking.[1]

Article 1, Section 21 of the Tennessee Constitution provides "[t]hat no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Our Legislature has directed that "[i]n all instances the amount to which an owner is entitled shall be determined by ascertaining the fair cash market value of the property or property rights taken . . . ." Tenn. Code Ann. § 29-17-910. The objective of an eminent domain proceeding, therefore, is to ascertain and award just compensation to the landowner—an amount based upon a fair, cash market value of the property on the date of the taking. *Love v. Smith*, 566 S.W.2d 876, 878 (Tenn. 1978); *see also Nashville Housing Authority v. Cohen*, 541 S.W.2d 947, 950 (Tenn. 1976); *Alloway v. Nashville*, 13 S.W. 123 (Tenn. 1890)).

The fair market value of the land or rights taken is to be determined by the fact finder after considering all relevant facts affecting value as well as all the legitimate uses for which the property is available and reasonably adapted. *Love*, 566 S.W.2d at 878; *Cohen*, 541 S.W.2d at 950; *State of Tenn. ex rel. Dep't of Transp., Bureau of Hwys v. Brevard*, 545

---

[1] The statute in effect at the time of the taking of the Morrises' property was codified at Tenn. Code Ann. § 29-17-810; it was recodified effective July 1, 2006 as Tenn. Code Ann. § 29-17-910. Since § 29-17-910 is a recodification of § 29-17-810 rather than a substantive amendment, our discussion refers to § 29-17-910. The statute provides as follows:

> In all instances the amount to which an owner is entitled shall be determined by ascertaining the fair cash market value of the property or property rights taken and adding to the same the amount of incidental damage done to the residue of the owner's property, if any, after deducting from the incidental damages to the residue the value of all special benefits, if any, occasioned such residue by the construction of such street, road, highway, levee, ditch, drain, watercourse improvement (when such levee, ditch, drain, or watercourse improvement is condemned pursuant to § 29-17-901(a)(2)), freeway or parkway including, but not limited to, increased accessibility to the owner's property, greater convenience in the approach with vehicles, the advantages generally of a front on a more desirable roadway, better drainage, or increased attractiveness.

S.W.2d 431 (citing *Alloway*, 13 S.W. 123; *Davidson County Board of Education v. First American Bank*, 202 Tenn. 9, 301 S.W.2d 905, 907 (1957)). In condemnation cases, a trial court is allowed "wide discretion" when ruling on the admissibility of an expert's testimony as to the value of the land taken "because the weight to be given each expert's testimony is for the trier of fact." *City of Murfreesboro v. Pierce Hardy Real Estate, Inc.*, M2000-00562-COA-R9-CV, 2001 WL 1216992, at *2 (Tenn. Ct. App. Oct. 12, 2001) (citing *State ex rel. Dep't of Transp. v. Brevard*, 545 S.w.2d 431, 436 (Tenn. Ct. App. 1976). Proof of damages, including opinions of value, is adduced as in any other case, and the factfinder is then responsible for considering and weighing the proof and assessing the damages. In its role, the factfinder is given wide latitude in weighing the credibility of the expert and the value of the expert's testimony. *Brevard*, 545 S.W.2d at 436.

As noted by the City, Tenn. Code Ann. § 29-17-910 does not prohibit an expert from providing an opinion of value at a time other than the date of the take. The statute addresses only the nature of the damages to be awarded and how those damages are determined; its instruction is that the damages awarded must represent the value of the land on the date of taking. The statute does not operate to limit the evidence that may be presented to determine value. Mr. Hahn not only testified to the value of the land in October 2003, but also included an estimated percentage by which the land's value increased by 2–3% per year. The fact that he appraised the land in October 2003 did not affect the admissibility of the evidence, but rather its weight—a determination properly left to the jury. Accordingly, the trial court did not err in admitting the testimony of Mr. Hahn.

## 2. Testimony of Bob Bryant

The admissibility of expert testimony is governed by the Tennessee Rules of Evidence. When determining the admissibility of expert testimony, the role of the trial court is that of a gatekeeper. *State v. Scott*, 275 S.W.3d 395, 401 (Tenn. 2009); *see also State v. Copeland*, 226 S.W.3d 287, 300-01 (Tenn. 2007); *Johnson v. John Hancock Funds*, 217 S.W.3d 414, 425 (Tenn. Ct. App. 2006)). Generally, questions pertaining to the qualifications, admissibility, relevancy, and competency of expert testimony are matters left to the trial court's discretion, and the trial court's ruling admitting or excluding expert testimony may be overturned only if the court abused its discretion. *Brown v. Crown Equipment Co.*, 181 S.W.3d 268, 273 (Tenn. 2005) (citing *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002); *McDaniel*, 955 S.W.2d 257 (Tenn. 1997)). The trial court's responsibility is to "ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Brown*, 181 S.W.3d at 275 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Once the evidence is admitted, "it will thereafter be tested with the crucible of vigorous cross-examination and countervailing

proof." *Stevens*, 78 S.W.3d at 835 (citing *McDaniel*, 955 S.W.2d at 265). Furthermore, the weight to be given to an expert opinion and the resolution of legitimate, competing expert views are matters appropriately entrusted to the trier of fact. *Id.*

The Morrises contend that Mr. Bryant was not qualified to testify as an expert because he is an "affiliate broker" and assert that Tenn. Code Ann. § 62-39-103(a)[2] prohibits an affiliate broker from testifying as to the value of the land.[3]

The State Licensing and Certified Real Estate Appraisers Law, Tenn. Code Ann. §§ 62-39-101 – 604, is a comprehensive law, *inter alia,* creating a Real Estate Appraiser Commission and setting forth the license and certification requirements for real estate appraisers. Nothing in the law excludes affiliate real estate brokers from testifying as to value in a condemnation case. The particular statute cited by the Morrises is directed toward those who would be asked to prepare an appraisal of real property, not to one who is asked an opinion of the value of property. Indeed, § 103(b) provides that the section "shall not be construed to apply to individuals who render professional assistance in arriving at a real estate analysis, opinion or conclusion." While the Morrises are correct that licensed appraisers can testify as to value, they are not the only persons properly admitted as experts[4], and the statute cited by the Morrises does not limit the trial court's discretion in admitting

---

[2] Section 103(a) states:

Except as provided in § 62-39-104, it is unlawful for anyone to solicit an appraisal assignment or to prepare an appraisal or an appraisal report relating to real estate or real property in this state without first obtaining a real estate appraiser's license or certificate.

[3] The Morrises also contend that Mr. Bryant's opinion was inadmissible because he "was never asked to give his opinion as to the fair market value . . . on the Date of Take, and, instead, only testified as to the difference in certain values and market changes." Mr. Bryant testified that he had been asked to determine the difference between the value of the Morrises property between October 9, 2003 and December 10, 2004 and that, in his opinion, the property appreciated by $47 per acre over the period. His testimony was complementary to that of Mr. Hahn. Because we have held that Mr. Hahn's opinion does not have to be specific to the date of the taking to be admissible, we reject the Morrises' contention that Mr. Bryant's testimony is inadmissible on that basis. Therefore, our discussion is limited to whether Tenn. Code Ann. § 62-39-103(a) prohibits affiliate brokers from providing an opinion of value.

[4] Tennessee has long "followed a policy of liberality in admitting opinion evidence respecting the fair cash market value of real estate" allowing both lay and expert witnesses to give his or her opinion of the fair market value of real estate so long as it is not founded on pure speculation. *State ex rel. Smith v. Livingston Limestone Co.*, 547 S.W.2d 942, 943 (Tenn. 1977); *see Wray v. Knoxville, L. F. & J. R. Co.*, 82 S.W. 471 (Tenn. 1904); *Drainage Dist. No. 4, Madison County v. Askew*, 204 S.W. 984 (Tenn. 1918); *Lebanon & Nashville Turnpike Co. v. Creveling*, 17 S.W.2d 22 (Tenn. 1929); *Union Joint Stock Land Bank of Louisville v. Knox County*, 97 S.W.2d 842 (Tenn. Ct. App. 1936); 27 *Am. Jur. 2d Eminent Domain* § 581.

or excluding the testimony of affiliate brokers, to the extent the testimony otherwise complies with the Tennessee Rules of Evidence.

The standards set forth in Rules 702 and 703 govern the admissibility of expert testimony. Mr. Bryant testified that he was engaged in the real estate market in Giles County for ten years. He worked as an agent for buyers and sellers, and in that capacity had knowledge of agricultural, residential, and commercial property. Mr. Bryant knew the date of taking as well as the date of valuation by Mr. Hahn, and he was generally familiar with the real estate market for property of the kind acquired by the City. Mr. Bryant's testimony demonstrated that he has "specialized knowledge" that "will substantially assist the trier of fact to understand the evidence or to determine a fact in issue," specifically the value of the land on the date of the taking. Tenn. R. Evid. 702. Accordingly, Mr. Bryant was qualified to testify as to the change in value of the property between October 2003 and December 2004.

### 3. Motion for new trial

After the final judgment was entered on July 27, 2009, the Morrises filed a motion for new trial, asserting error in the court's admission of the testimony of Mr. Hahn and Mr. Bryant. On appeal, they contend that the trial court failed to properly fulfill its duty as thirteenth juror because, in denying the motion for new trial, the court misstated the testimony of Mr. Hahn[5] and characterized Mr. Bryant as a "licensed affiliate real estate broker," a statement the Morrises assert is not borne out by the record.

This Court will not reverse the denial of a motion for new trial where the grounds for the motion as filed in the trial court were legally insufficient. As we have decided, the testimony and opinions of Mr. Hahn and Mr. Bryant were properly admitted. The court's misstatement of Mr Hahn's testimony in its order overruling the motion for new trial and whether the evidence supports the court's characterization of Mr. Bryant as a "licensed" broker do not constitute error.

### 4. Material evidence

The Morrises contend that the jury verdict was not supported by material evidence; they base this claim on their contention that the testimony of value presented by the City was

---

[5] The court wrote, "Based on the court's recollection, Mr. Hahn testified that he was knowledgeable about the real estate market in Giles County, and opined there had not been a change in the value of the property between the date of his appraisal and the date of the take." In fact, as stated earlier, Mr. Hahn testified that the property appreciated 2–3% annually since the date of the taking.

improperly admitted. Inasmuch as we have determined that there was no error in the admission of the City's evidence relative to value, there is material evidence in support of the verdict and the verdict does not preponderate against the evidence.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court is AFFIRMED. The case is remanded to the Circuit Court for Giles County for enforcement of the judgment and collection of costs rendered therein and for such further proceedings as may be necessary.

_____

RICHARD H. DINKINS, JUDGE